UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| GERALDINE MEYERS,<br><br>Petitioner,<br><br>vs.<br><br>JAVIER CAVAZOS, Warden,<br><br>Respondent. | Civil No.   11cv0485 BTM (PCL)<br><br>**REPORT AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS** |
|---|---|

## I. INTRODUCTION

Petitioner Geraldine Meyers, a prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging her conviction in San Diego County Superior Court case number SCE266416 for second degree murder with personal discharge of a firearm proximately causing death. [Lodgment 5, at 1.] Meyers was found guilty after a jury trial and sentenced to a prison term of 40 years to life. [Id.] Exhaustion and timeliness are not at issue.

This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(d)(4) for Proposed Findings of Fact and Recommendation for Disposition. For the reasons set forth below, the Court respectfully recommends that the Petition be **DENIED**.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Summer v. Mata, 449 U.S. 539, 550 (1981) (holding findings of historical

fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken verbatim from the California Court of Appeal's opinion denying Meyers direct appeal of her conviction.

> Meyers was physically fit, worked as a personal trainer and a kickboxing instructor, and had a strong personality. She became romantically involved with Demetrius Warren in 1998. Warren was fit and muscular. Meyers told others he was physically abusive.
>
> In 2006 Warren became involved with another woman, and Meyers became involved with a man she had met on the Internet, Auteria Winzer. Some of the e-mails between Meyers and Winzer were admitted at trial.
>
> On November 20, 2006, Meyers went to the manager's office at her apartment complex, hysterical and upset, and asked the manager to call 911. Meyers left, returned a few minutes later, and said, "I thought he was going to beat me again so I shot him." She put a gun on the counter.
>
> A police officer found Warren's body face down on the floor of Meyer's apartment. There were three bullet holes in his head, two entrance wounds and one exit wound.

[Lodgment 5, at 2.]

## III.    PROCEDURAL BACKGROUND

On May 17, 2007, the San Diego County District Attorney filed an information charging Petitioner Geraldine Meyers with one count of murder, a violation of California Penal Code § 187(a), and alleging personal discharge of a firearm, proximately causing great bodily injury and death to a person within the meaning of California Penal Code § 12022.53(d), in the commission of the offense. [Lodgment 1, at 2.] Meyers sought a new attorney both prior to and after trial. Marsden hearings were held on May 24, 2007 and again, after the verdict was rendered, on March 12, 2008, but the court did not find cause to appoint different counsel. [Doc. 1, at 101-141.] On February 1, 2008, a jury found Meyers guilty of second degree murder and found that Meyers did intentionally and personally discharge a firearm and proximately caused death to a person within the meaning of California Penal Code § 12022.53(d). [Lodgment 1, at 69.] On April 2, 2008, Meyers was sentenced to a term of 15 years to life for second degree murder with an enhancement of 25 years to life for the intentional and personal discharge of a firearm. [Lodgment 1, at 91.]

On April 8, 2008, Meyers's counsel filed a <u>Wende</u> brief[1] raising the issues of whether trial counsel was ineffective for not seeking a psychological evaluation of Petitioner; whether the court erred by admitting e-mails between Meyers and a man she met on the internet prior to the killing; whether the evidence was insufficient to support the murder conviction, as there was no evidence of malice; and whether the evidence that Meyers unlawfully killed Warren was insufficient in light of the evidence she was a battered woman. [Lodgment 4.] The California Court of Appeal affirmed Meyer's conviction on March 10, 2009 and the Supreme Court of California denied review on May 15, 2009. [Lodgments 5, 6, & 7.]

Acting *in propria persona* Meyers filed a petition for writ of habeas corpus in the San Diego County Superior Court on March 10, 2010 arguing ineffective assistance of counsel, prosecutorial misconduct, and that the trial court erred in restricting the defense evidence. [Lodgment 8.] The court denied Meyers's petition on May 13, 2010. [Lodgment 9.] Meyers filed another petition in the California Court of Appeal on June 8, 2010 raising the same claims, which was denied on July 8, 2010. [Lodgments 10 & 11.] Meyers then filed a petition in the Supreme Court of California on July 21, 2010, which was summarily denied on February 16, 2011. [Lodgments 12 & 13.] Meyers filed the present petition in the District Court on March 9, 2011. [Doc. 1.]

**IV.    STANDARD OF REVIEW**

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the

---

[1] If appellate counsel for a criminal defendant reviews the record and concludes that there are no arguable issues and that the appeal is frivolous, he or she may file a brief that sets forth a summary of the proceedings and facts requesting that the appellate court independently review the entire record for arguable issues. See <u>People v. Wende</u>, 25 Cal.3d 436, 438, 441–43 (1979), disapproved of on other grounds, <u>In re Sade C.</u>, 13 Cal.4th 952 (1996).

state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 72 (2003).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. Bell v. Cone, 535 U.S. 685, 694 (2002). However, a state court need not cite, or even be aware of, Supreme Court precedent when resolving a habeas corpus claim. Packer, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. Id.

The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. Bell, 535 U.S. at 694. An incorrect or erroneous application is not sufficient to find that the state court's application of governing federal law was objectively unreasonable. Id. Rather, the state court's determination that a claim lacks merit precludes federal relief so long as "fairminded jurists" could disagree" on the correctness of the state court's decision. Harrington v. Richter, ___ U.S. ___ , 131 S.Ct. 770, 786 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). When evaluating reasonableness, a court must consider the specificity of the rule that was applied by the state court. Id. The more general the rule, the more leeway courts have in reaching conclusions. Id. And, even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).

Finally, where, as is the case here, there is no reasoned decision from the state's highest court, the reviewing court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). If the state court does not supply reasoning for its decision , federal habeas review is not de novo but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Andrade, 538 U.S. at 75-76).

**V.    DISCUSSION**

Meyers raises three grounds for relief: (1) ineffective assistance of counsel, (2) prosecutorial misconduct, and (3) improper restriction of defense evidence.

### A.   *Ground One - Ineffective Assistance of Counsel for Failure to Investigate*

In Ground One, Meyers contends she received ineffective assistance of counsel when her trial counsel failed to fully investigate and present her Battered Women's Syndrome defense. [Doc. 1, at 6.] She states that her counsel improperly rejected a battered women's defense based on his personal views and then "refused to demonstrate some plausible alternative defense strategy" by not obtaining her medical records prior to her preliminary hearing, by not obtaining a state ordered psychological evaluation, and by stating to the court in a Marsden hearing that he did not believe Meyers fit the "classic battered woman" profile. [Docs. 1, at 3-5; 1-1, at 15-18; & 1-3, at 43-47.] Meyers argues that subsequently, during trial, her attorney was unsympathetic to her and failed to adequately advocate her case. [Id.] She alleges that her attorney had a "conflict of interest" and "prejudice without cause" apparently based on his opinion that Meyers's case would be very difficult to win. [Id. at 5 & 1-3, at 43-47.] Finally, Meyers alleges that her appellate counsel was ineffective for failing to raise the above issues on appeal. [Id.] Respondent argues that Meyers's petition must be denied because the state court reasonably determined that there was no evidence of either deficient performance or prejudice from trial counsel's alleged failure to investigate. [Doc. 10, at 15.]

Under § 2254(d), a petitioner must establish that the state court's application of governing federal law was unreasonable. Bell, 535 U.S. at 694. The governing federal law in ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). Cullen v. Pinholster, ___U.S. ___; 131 S.Ct. 1388, 1403 (2011).

The Supreme Court, in Strickland, held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 688.

Strickland creates a highly deferential standard which requires that petitioners overcome a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise

1  of reasonable professional judgment. <u>Strickland</u>, 466 U.S. at 690. To do so a petitioner must show that
2  counsel failed to act reasonably considering all the circumstances. <u>Id.</u> at 688. If a petitioner is able to
3  overcome this presumption, then the petitioner must also prove he or she was prejudiced by counsel's
4  unprofessional errors. <u>Id.</u> at 691-92. This requires a showing that, but for counsel's unprofessional
5  errors, the result of the proceeding would have been different. <u>Id.</u> <u>Strickland</u> does not ask whether a
6  court can be certain counsel's performance had no effect on the outcome or whether a reasonable doubt
7  could have possibly been established, but rather whether it is "reasonably likely" the result would have
8  been different. <u>Richter</u>, 131 S.Ct. at 786 (citing <u>Wong v. Belmontes</u>, 558 U.S. ——, ——, 130 S.Ct. 383,
9  390 (2009) (per curiam) (slip op., at 13)). "The likelihood of a different result must be substantial, not
10 just conceivable." <u>Id.</u>

11       Moreover, the standard in § 2254(d) is also highly deferential and, when applied in tandem with
12 <u>Strickland</u>, review is doubly so. <u>Id.</u> at 788 (citing <u>Murphy</u>, 521 U.S. at 333 n.7; <u>Knowles v. Mirzayance</u>,
13 556 U.S. 111, ___ (2009)). As amended by AEDPA, § 2254(d) stops short of imposing a complete bar
14 on federal court relitigation of claims already rejected in state proceedings. <u>Richter</u>, 131 S.Ct. at 786
15 (citations omitted). It preserves authority to issue the writ in cases where there is no possibility
16 fairminded jurists could disagree that the state court's decision conflicts with Supreme Court precedents.
17 <u>Id.</u> In order for this court to grant a writ of habeas corpus, Meyers must establish that there is no
18 possibility any fairminded jurist could disagree that the state court correctly applied <u>Strickland</u> in
19 concluding that Meyers received effective assistance of counsel.

20       Applying the <u>Strickland</u> standard, the California Court of Appeal determined that Meyers failed
21 to show that but for counsel's purported errors or omissions that she would have achieved a better result.
22 [Lodgment 11.] The court rejected Meyers's contention that her trial counsel failed to adequately
23 investigate a defense of Battered Women's Syndrome because the record demonstrated that her counsel
24 had investigated the issue when he considered obtaining a psychological examination of Meyers, but
25 determined that it would not be in her best interests to do so. [Id. at 4.] Because courts accord great
26 deference to trial counsel's tactical decisions, it would not be appropriate to second guess that decision.
27 [Id. at 3 - 4.] In addition, evidence of Meyers's allegations of abuse were presented to the jury through
28 Meyers's testimony and the testimony of Cynthia Bernee, a licensed marriage and family therapist, who
testified as an expert in intimate partner violence. [Id.] Bernee examined Meyers and testified that her

1  behavior and demeanor were consistent with a battered woman. [Lodgment 11.] The the jury was
2  instructed pursuant to California Jury Instruction 851 Testimony on Intimate Partner Battering and its
3  Effects. [Lodgment 1, at 36.] It was also instructed pursuant to CALJI 505 Justifiable Homicide: Self-
4  Defense. [Id. at 43.] After being so instructed, the jury found Meyers guilty of second degree murder.
5  [Id.]

6  After reviewing the record, this Court has confirmed that Meyers did, in fact, present her theory
7  of Battered Women's Syndrome to the jury. Ms. Bernee testified about battered women's syndrome.
8  [Lodgment 3, at 1306-1405.] She testified that Post Traumatic Stress Disorder is a typical response to
9  abuse. [Id. at 1319.] She also testified that she had interviewed Meyers and that Meyers statements were
10 consistent with someone who is battered. [Id. at 1341-42.] The jury was given instruction on intimate
11 partner battering and its effects; justifiable homicide: self-defense; voluntary manslaughter: imperfect
12 self-defense; and voluntary manslaughter: heat of passion. [Lodgment 1, at 36, 43, 49, 51.]

13  Under the doubly deferential standards of § 2254(d) and <u>Strickland</u>, this Court cannot conclude
14 that Meyers is entitled to habeas relief on her claims of ineffective assistance of counsel. She has not
15 demonstrated beyond all possibility that "fairminded jurists could disagree," <u>Richter</u>, 131 S.Ct. at 786,
16 the California Court of Appeal reasonably applied <u>Strickland</u> when it held that "Meyers failed to show
17 that her counsel committed error of 'constitutional magnitude that led to a trial that was so fundamentally
18 unfair that absent the error no reasonable judge or jury would have convicted [her].'" [Lodgment 9, at
19 4.] Put another way, Meyers has failed to show that the state court unreasonably applied federal law
20 when it determined that the tactical decisions made by her counsel did not constitute ineffective
21 assistance of counsel. See <u>Bell</u>, 535 U.S. at 694.

22  Meyers also claims her appellate counsel was ineffective for failing to raise this issue on appeal.[2]
23 [Doc. 1, at 18.] However, appointed appellate counsel does not have a duty to argue every non-frivolous
24 point requested by a defendant, but rather, may decide to advance only the strongest arguments. See
25 <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983). Moreover, her appellate counsel filed a <u>Wende</u> brief
26 requesting the court to conduct an independent review of the record for arguable issues, including
27
28

---

[2] Meyers raises ineffective assistance of appellate counsel claims as to all three grounds for relief presented in her Petition. This analysis applies to all.

1  whether trial counsel was constitutionally ineffective for not seeking a psychological evaluation of
2  Meyers. [Lodgment 4, at 22.] Meyers's ineffective assistance of appellate counsel claim lacks merit
3  because although not required to present every issue requested by Meyers on appeal, her appellate
4  counsel did present the issue in question.
5      Therefore, Meyers's claims of ineffective assistance of counsel are hereby DENIED.

### 2.   *Ground Two - Prosecutorial Misconduct*

7      Meyers claims the prosecutor was improperly allowed to refresh a witness's memory outside the
8  courtroom in violation of "Federal Rule 612." [Docs. 1, at 8 and 1-1, at 10-12.] Though she titles her
9  claim "prosecutorial misconduct," Meyers is actually challenging the trial court's application of
10 California Evidence Code § 771, which provides that the opposing party may request the production of
11 a writing used to refresh a witness's memory. Cal. Evid. Code § 771, West 2011. Meyers complaint
12 involves a witness who, after having her memory refreshed by her own prior statements to police,
13 testified that she was aware of the fact that the victim had a second girlfriend in addition to Meyers.
14 [Docs. 1, at 7 & 1-1, at 22-24.] Meyers contends that by allowing the witness to read her prior statements
15 outside the court, the prosecutor committed misconduct and denied Meyers the right to inspect the
16 materials shown to the witness. [Doc. 1-1, at 11.] In addition, although not presented as a separate
17 ground for relief, Meyers alleges ineffective assistance of counsel by arguing that her trial counsel failed
18 to object. [Id.] This last argument lacks merit for the same reasons as Meyers's other ineffective
19 assistance of counsel claims.

20     A federal habeas court cannot review questions of state evidence law. <u>Estelle v. McGuire</u>, 502
21 U.S. 62, 72 (1991); <u>Hayes v. Ayers</u>, 632 F.3d 500, 515 (9th Cir. 2011); <u>Henry v. Kernan</u>, 197 F.3d 1021,
22 1031 (9th Cir. 1999). A federal habeas court may only consider whether the petitioner's conviction
23 violated constitutional norms. <u>Henry</u>, 197 F.3d at 1031. Even where it appears evidence was erroneously
24 admitted, a federal court will interfere only if the admission violated fundamental Due Process. <u>Id.</u>

25     Meyers has alleged the procedure used to refresh the witness's memory violated Due Process.
26 [Doc. 1-1, at 12.] However, when it denied Meyers's habeas petition, the California Court of Appeal
27 relied on Evidence Code § 771 "which permits a witness to refresh his or her memory 'either while
28 testifying or prior thereto' with a writing; the writing must be produced at the hearing at the request of
   an adverse party." [Lodgment 11.] The court found that Meyers failed to demonstrate the witness's

memory was improperly refreshed or that she was prejudiced by any purported error. [Lodgment 11.] Because even error by a trial court in applying rules of evidence will not necessarily rise to the level of a constitutional violation; procedures that comport with the rules of evidence will certainly not do so. In this case, California rules of evidence allow for precisely the procedure that was used, therefore Meyers cannot complain of a constitutional violation. Cal. Evid. Code § 771, West 2011.

As to Meyers's argument that the prosecutor violated "Federal Rule 612," federal rules do not apply in state trials.

For the foregoing reasons, Meyers's claim of prosecutorial misconduct is hereby DENIED.

### 3. *Ground Three - Limited Defense Evidence*

Meyers argues that her Due Process rights were violated when the trial court limited Battered Women's Syndrome Expert Cynthia Bernee's testimony so as to prevent it from "invading the province of the jury[3]," and did not allow the defense to present an arrest report from the victim's prior gun arrest or evidence of his failure to pay child support. [Doc. 1-1, at 15-16.] She also challenges limitations the court placed on the testimony of Meyers's sister as well as the admission of a binder full of email and instant messages between Meyers and a man she met on the internet. [Id.] Meyers argues that a more favorable outcome would have resulted if her evidence had not been limited. [Id.] The state habeas court dismissed this ground because it will not review issues that could have been brought on appeal, but were not. [Lodgment 9, at 2.]

Due Process is, in essence, the right to a fair opportunity to defend against the State's accusations. Perry v. Rushen, 713 F.2d 1447, 1452 (9th Cir. 1983) (citing Chambers v. Mississippi, 410 U.S. 284, 294 (1973)). "[It] does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." See Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)). A defendant's right to present relevant evidence is not unlimited; it is subject to reasonable restrictions imposed by evidentiary and procedural rules. Moses v. Payne, 555 F.3d 742, 757 (9th Cir. 2009) (citing United States v. Scheffer, 523 U.S. 303, 308 (1998)). And, when deciding whether an evidentiary ruling which excludes defense evidence violates due process the habeas court must balance the importance of

---

[3] It is the sole province of the jury to determine questions of credibility and to weigh the evidence adduced at trial. Moses, 555 F.3d at 761 (citing Goldman v. United States, 245 U.S. 474, 477 (1918) and United States v. Young, 470 U.S. 1, 18-19 (1985)).

1 the evidence against that state interest in exclusion. <u>Perry</u>, 713 F.2d at 145.

2       The determination of the importance of the excluded evidence rests on the consideration of five factors: (1) the probative value of the excluded evidence; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. <u>See</u> <u>Tinsley v. Borg</u>, 895 F.2d 520, 530 (9th Cir. 1990). These factors are balanced against the state's interest in exclusion, which in turn rests on the purpose of the rule employed to exclude the evidence, how well the rule implements its purpose, and how well the rule applies to the case at hand. <u>Perry</u>, 713 F2d. at 1453. Moreover, even erroneous exclusion of evidence does not violate Due Process unless its exclusion has a "substantial and injurious" effect in determining the jury's verdict. <u>Moses</u>, 555 F.3d at 760 (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993)).

      The court in <u>Perry</u> characterized the circumstances required to outweigh the state's interest in administration of its trials as "unusually compelling" and illustrated this point by describing two Supreme Court cases in which exclusion was deemed to have violated a defendant's due process rights. <u>Perry</u> 713 F.2d at 1452. In the first, a defendant sought to introduce hearsay evidence that another person had confessed to the crime. The trial court excluded the evidence but the Supreme Court held that the exclusion of the evidence rendered the trial unfair; the evidence was trustworthy because it was against the declarant's penal interest; and it was critical because it was the sole means by which the defendant could present his side of the story. <u>Id.</u> (citing <u>Chambers v. Mississippi</u>, 440 U.S. 284 (1973)).

      In the second, a defendant sought to introduce testimony by an accomplice to murder who had already been convicted of the murder. <u>Id.</u> (citing <u>Washington v. Texas</u> 388 U.S. 14 (1967)). The trial court excluded the evidence, not based on a rule of evidence, but based on a state statute prohibiting any coparticipant in a crime from testifying on behalf of his fellow participant. <u>Id.</u> The Supreme Court held that the statute violated the defendant's Sixth Amendment rights because it constituted an arbitrary and unfair exclusion of a class of witnesses who's testimony was considered sufficiently reliable for prosecution use. <u>Id.</u> Such testimony outweighed a "weak" state interest demonstrated by the arbitrary and unfair nature of the statute preventing the accomplice from testifying. <u>Id.</u>

The Perry court noted that in each of these cases the evidence was highly exculpatory and it was also crucial to the defense because these defendants had no other avenues to prove their stories. Perry, 713 F2d. at 1453. However, the court also noted that where the state interest is strong, only the exclusion of critical, reliable, and highly probative evidence will violate due process, but where the state's interest is weaker, less significant evidence is protected. Id.

The trial court heard the prosecution's motion seeking to prevent Bernee from testifying as to her belief in Meyers's truth telling and seeking to prevent Bernee from relating to the jury hearsay statements made to her by Meyers during interviews with Bernee. [Lodgment 3, at 15-22.] After hearing arguments from both sides, the trial judge stated that any limitations on Bernee's opinion testimony were "just a matter of phraseology." [Id. at 18.] The court allowed Bernee to testify based on Meyers's statements and was allowed to testify that, based on those statements, the information was consistent with a battered woman. [Id.] But she was not allowed to testify that she had concluded Meyers actually was a battered woman or that she believed Meyers was truthful. [Id.] Despite this ruling, Bernee at one point did testify that she believed Meyers was a battered woman - a conclusion properly reserved for the jury. [Id. at 1431-32.]

As to the hearsay statements, Bernee was allowed to testify that she interviewed Meyers, but was not allowed to repeat the hearsay content of those interviews unless the statements were also introduced via other means or witnesses. [Id.] The limitations placed on Bernee's testimony were minimal; the excluded statements were not the sole evidence on the subject and did not prevent Meyers from presenting a complete defense, and therefore did not violate Meyers's Due Process rights. Further, even if the exclusion was in error, because Bernee testified to the ultimate conclusion that she believed Meyers was, in fact, a battered woman, any attempt to exclude testimony as to that conclusion could not have had a "substantial and injurious effect" on the jury's determination of the verdict.

Meyers also complains that she was not permitted to present evidence that the victim had been arrested for gun possession, evidence that he did not pay child support, and that the testimony of Meyers's sister was limited. [Docs. 1, at 8 and 1-1, at 15-16.] Meyers argues that such evidence would have been relevant to her state of mind, served as mitigating evidence, and that "suppression of favorable evidence violated her due process rights." [Id. at 16.]

The record indicates that the prosecution was concerned the defense would attempt to introduce

evidence that the victim had failed to pay child support and made a motion to exclude such evidence as irrelevant and prejudicial. [Lodgment 3, at 26-28.] Defense counsel stated that he agreed that it would be irrelevant and did not intend to introduce the evidence. [Id. at 27.] However the subject resurfaced later in the trial and the judge ruled that the evidence was irrelevant and, even if relevant, was unduly prejudicial to the people. [Lodgment 3, at 992-995.] Late payment of child support by the victim is, at best, tangentially relevant to Meyers's allegations of abuse. It is neither highly exculpatory nor crucial and Meyers's interest in introducing it did not outweigh the state's strong interest in the administration of its trials. Moses v. Payne, 555 F.3d 742, 757 (9th Cir. 2009). As to the gun arrest, the defense sought to introduce a report of the victim's arrest for gun possession to demonstrate that Meyers's claimed fear of abuse from the victim was legitimate. [Id. at 28.] The court ruled the arrest report inadmissible as hearsay, but allowed Meyers to testify about the subject. [Id. at 32 & 982-86.] Likewise the arrest report was neither highly exculpatory nor crucial to the defense nor was it the sole evidence on the subject, therefore, its exclusion did not violate due process.

      The testimony of Meyers's sister, Cheryl Yancey, was limited as to hearsay statements made to Yancey by Meyers. The court ruled that Yancey could not testify about the details relayed to her by Meyers in a phone call, but could testify more generally about what Meyers had relayed, namely an incident between Meyers and the victim. [Lodgment 3, at 34-36.] The record reveals that, in fact, the defense questioned Yancey about a phone call between Meyers and Yancey. [Id. at 512-15.] Yancey testified that during the call, Meyers revealed she was being chased by the victim and sounded so distressed it caused Yancey to call the police. [Id.] As above, Meyers simply did not have a "weighty interest" in introducing hearsay statements made to Yancey and the trial court's exclusion of the statements did not violate her due process rights. Moses, 555 F.3d at 757 (citing Holmes v. South Carolina, 547 U.S. 319, 326 (2006)).

      Meyers also complains that the trial judge improperly allowed the prosecutor to introduce a notebook of electronic messages between Meyers and a man she met on the internet prior to the shooting. [Doc. 1-1, at 16.] She argues these messages were unduly prejudicial and had no bearing on her state of mind. [Id.] Meyers's trial counsel objected to admission of the binder as irrelevant and unduly prejudicial and the court heard argument on the subject from both sides. [Lodgment 3, 995-1000.] The judge stated that the messages were extremely relevant to Meyers's state of mind at the time of the killing

and admitted the binder after marking out certain messages that the judge deemed prejudicial. [Lodgment 3, at 995-1000, 1409-10.] On habeas review, even erroneously admitted evidence does not rise to the level of a constitutional violation absent a substantial and injurious effect or influence in determining the jury's verdict. See Henry v. Kernan, 197 F.3d 1021, 1026-30 (9th Cir. 1999) (holding that a confession obtained in violation of Miranda was erroneously admitted and had a substantial and injurious effect on the jury's verdict.) And, where the evidence is cumulative, it's admission cannot render the trial fundamentally unfair. Henry, 197 F.3d.at 1031. Several witnesses testified about Meyers relationship with another man, including Meyers and the man himself. Therefore, the notebook was cumulative and cannot have caused a violation of Due Process.

## IV.    CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Barry Ted Moskowitz under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) **DENYING** Petition for Writ of Habeas Corpus.

IT IS ORDERED that no later than **January 17, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **February 7, 2012**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: December 27, 2011

Peter C. Lewis
U.S. Magistrate Judge
United States District Court